

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00474-CV

**IN THE INTEREST OF B.E.S.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-02300
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: April 27, 2022

AFFIRMED

In this parental rights termination case, the trial court terminated Dad's parental rights to his child B.E.S.[i]

Dad challenges the legal and factual sufficiency of the evidence for the trial court's findings on one statutory ground and the best interest of the child, and he argues it abused its discretion in its conservatorship finding.

Because the evidence was legally and factually sufficient to support the trial court's findings under the heightened evidentiary standards, we affirm the trial court's order.

---

[i] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

## BACKGROUND

In early 2020, Mom gave birth to B.E.S. Later that year, after Mom completed a drug treatment program, she moved to an outpatient program. In June, Mom started transitional visits with B.E.S., and by August, B.E.S. was fully placed with Mom. In November, Mom was discovered to be so intoxicated she could not care for B.E.S., and because Dad was incarcerated on charges of physically assaulting Mom, the Department removed B.E.S.

The Department created service plans for Mom and Dad. Mom engaged in all her services, but Dad was limited to the services available at the Bexar County Adult Detention Center, including courses in cycle of trauma, parenting, substance abuse, and therapy.

After multiple permanency hearings over many months, and eventually a short bench trial on the merits, the trial court found by clear and convincing evidence that Dad's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(E), (N), and (O), and that terminating Dad's parental rights was in B.E.S.'s best interest. The trial court terminated Dad's parental rights to B.E.S. and appointed Mom as B.E.S.'s permanent managing conservator.

Dad filed a notice of appeal. He challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on ground (E) and best interest of the child, but he does not challenge its findings on grounds (N) or (O). Dad also challenges the trial court's conservatorship finding based on allegedly insufficient evidence to support its parental rights termination order.

Before we address Dad's issues, we briefly recite the applicable evidentiary and appellate review standards.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691

(Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal and factual[3] sufficiency standards of review. We apply those standards here.

### STATUTORY GROUNDS FOR TERMINATING DAD'S PARENTAL RIGHTS

In his first issue, Dad argues the evidence was legally and factually insufficient to support the trial court's findings that his course of conduct met statutory ground (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

### A. Statutory Grounds Findings

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Dad does not challenge the trial court's findings on grounds (N) or (O), either of which would support the termination order, *see In re A.V.*, 113 S.W.3d at 362, but Dad challenges ground (E), and we must detail the evidence supporting that ground, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code.").

We turn to the law and the evidence supporting the trial court's finding on ground (E).

**B. Section 161.001(b)(1)(E)**

A parent's rights to their child may be terminated if, inter alia, the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 109.

For a parent to endanger a child, "it is not necessary that the [parent's] conduct be directed at the child or that the child actually suffers injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *accord In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied) ("While subsection (E) endangerment must be a direct result of a parental course of conduct, the conduct described does not have to be specifically directed at the child; nor does it have to cause an actual injury to the child or even constitute a concrete threat of injury to the child.").

In reviewing the question of endangerment, we may consider factors such as a parent's imprisonment and course of domestic violence. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) ("While imprisonment alone is not a basis to terminate a parent's rights, it is an appropriate factor to consider because when a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being."); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment.").

**C. Dad's Course of Conduct Endangering the Child**

The trial court heard testimony regarding Dad's conduct that endangered B.E.S. including his criminal history, his incarceration, and his alleged physical assault of Mom and others.

*1.    Dad's Domestic Violence, Imprisonment*

Dad's criminal history, which began in the 1980s, includes family violence, resisting arrest, deadly conduct, aggravated sexual assault, and past violations of protective orders.

In 2019, shortly after Mom learned she was pregnant with B.E.S.—which fact Dad may or may not have known at the time—Dad allegedly violently assaulted Mom. According to Mom's account, Dad knocked out a few of her teeth, and she suffered facial injuries and bruises all over her body sufficient to require her to be hospitalized. Dad was arrested and charged with family violence, burglary with intent to commit assault, and violation of a protective order.

Dad's criminal history and his violent assault on Mom occurred before trial, and even though it was virtual, Mom chose to not participate in the trial because of her extreme fear of Dad.

Dad denied many of the allegations, including that he (1) assaulted Mom, (2) was ever convicted of aggravated sexual assault, or (3) was ever involved in a murder. But Dad admitted past charges for assaulting adults and pending charges for family violence, burglary with intent to commit assault, and violation of a protective order.

*2.    Legally, Factually Sufficient Evidence*

The evidence pertaining to Dad's domestic violence and incarceration included testimony of his more than thirty-year criminal history including family violence, resisting arrest, aggravated sexual assault, and violation of a protective order. Dad denied the allegations of assaulting Mom, aggravated sexual assault, and murder, but as the factfinder, the trial court was free to disbelieve some or all of Dad's denials. *See In re S.J.R.-Z.*, 537 S.W.3d at 691 (noting that in a bench trial, the judge "weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies"); *In re F.M.*, 536 S.W.3d at 844 (same).

Although Dad's alleged assault of Mom was not directed at B.E.S., Dad's violent conduct was evidence of endangering B.E.S. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort

Worth 2003, no pet.) ("[A]busive or violent conduct by a parent . . . may produce an environment that endangers the physical or emotional well-being of a child."); *In re J.I.T.P.*, 99 S.W.3d at 845; *see also Boyd*, 727 S.W.2d at 533 (noting that a parent's violence need not be directed at the child or the child injured to constitute endangering the child).

Further, Dad's imprisonment because of his violent conduct was also "a factor to be considered by the trial court on the issue of endangerment." *See Boyd*, 727 S.W.2d at 533 (allowing a parent's imprisonment to be considered as part of a course of conduct endangering a child); *In re M.R.J.M.*, 280 S.W.3d at 503 ("Conduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being.").

Moreover, Dad's voluntary conduct led to his incarceration—that separated him from B.E.S. and prevented him from caring for her—which could be considered an additional negative impact on B.E.S.'s emotional well-being. *See In re M.R.J.M.*, 280 S.W.3d at 503; *see also In re S.R.*, 452 S.W.3d 351, 360–61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Based on the evidence, the trial court could have found that Dad's deliberate course of conduct endangered B.E.S.'s physical and emotional well-being. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *In re M.R.J.M.*, 280 S.W.3d at 503 (imprisonment); *In re J.I.T.P.*, 99 S.W.3d at 845 (domestic violence). It could also have found that Dad's past deliberate conduct, including admitted assaults, could infer his future conduct in interacting with Mom or B.E.S. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.); *see also Walker*, 312 S.W.3d at 617 (noting that evidence of endangerment may be based on conduct "before the child's birth and both before and after the child has been removed by the Department").

We conclude the trial court could have "reasonably form[ed] a firm belief or conviction about the truth of the [Department's] allegations" that Dad engaged in conduct that endangered

B.E.S.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Therefore, the evidence was legally and factually sufficient to support the trial court's finding under subsection 161.001(b)(1)(E). *See In re C.H.*, 89 S.W.3d at 25; *Walker*, 312 S.W.3d at 618.

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, and Dad did not challenge grounds (N) or (O), we need not address them, *see* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

We overrule Dad's first issue.

BEST INTEREST OF THE CHILD

In his second issue, Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in B.E.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## A. Best Interest of the Child Factors

The Family Code statutory factors[4] and the *Holley* factors[5] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child, which includes the evidence we recited above that shows Dad's course of conduct under section 161.001(b)(1)(E). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d at 471.

The trial court heard the following testimony regarding Dad's course of conduct, including, e.g., his criminal history, his incarceration, his pending criminal charges, his lack of interactions with B.E.S., his inability to provide for B.E.S.'s needs, and B.E.S.'s placement with Mom.

*1.    Child's Age and Vulnerabilities*

At the time of trial, B.E.S. was only about eighteen-months old, and she was unable to care for herself. As a toddler, she needs an attentive caregiver who provides consistent, age-appropriate care to ensure her safety and well-being. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (I)).

*2.    Dad's History of Assaultive Conduct*

There was evidence that Dad has a long history of assaultive conduct including family violence, resisting arrest, aggravated sexual assault, and violation of a protective order. Dad's conduct, including allegedly physically assaulting Mom so violently that she required hospitalization, likely caused Mom's extreme fear of Dad, and it showed his ongoing violent behavior, which could adversely affect B.E.S.'s physical and emotional needs and could put her in physical or emotional danger. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)).

*3.    Dad's Excuses for Past Violence*

When the Department asked Dad about its concerns over his past violence, Dad responded "I do. I very much so understand that, but I also understand about the mom's, you know." Dad then quickly turned to blaming Mom for the family issues, and he did not otherwise accept responsibility for his history of violence, express any remorse for that history, or explain how he would prevent such outbursts in the future. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (I)).

*4.    Indicia of Parent-Child Relationship*

At the outset of the case, Dad denied paternity, but genetic testing showed he was B.E.S.'s father. The case worker mailed Dad's attorney a copy of the results and advised Dad of the results.

During the pendency of the case, while Dad was incarcerated, he did not have any visits with B.E.S. in person or virtually.

When asked about his relationships with his other children and when he had last reached out to any of them, he responded that his oldest daughter recently found him through Ancestry.com, and she initiated contact with him to get to know him. But Dad did not offer any examples of how he initiated or maintained contact with his other children. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (D), (G), (H)).

### 5. *Providing for Child's Needs*

The case worker testified that Dad did not provide any of B.E.S.'s needs while he was incarcerated. The case worker also expressed concern about Dad's ability to provide for himself and B.E.S. after he was released from incarceration given Dad's lengthy criminal record, and the case worker concluded that Dad was not able to meet B.E.S.'s physical or emotional needs now and likely would not be able to meet them in the future. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

### 6. *B.E.S.'s Placement*

B.E.S. is currently living with Mom, and Mom is complying with her service plan. Mom is ensuring all of B.E.S.'s needs are met, including physical and emotional needs, and Mom will be able to meet them in the future. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

### 7. *Ad Litem's Recommendation*

The child's ad litem recommended that it was in B.E.S.'s best interest that Dad's rights be terminated because he has no relationship with B.E.S., he did not appear to have any relationship with his other children, and he had not yet gone to trial on the family violence, burglary with intent to commit assault, and violation of a protective order charges, so he could not say when he might

eventually be released from custody. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

## B.    Sufficient Evidence on Best Interest Finding

The trial court could have believed the testimony that Dad has a decades-long criminal history including family violence, resisting arrest, and violating a protective order; his past and present family violence and incarceration could be indicative of his future conduct; he failed to have meaningful contact with B.E.S.; he has little or no relationship with his other children; and he was at risk of continued incarceration if convicted on the pending charges of family violence, burglary with intent to commit assault, and violating a protective order. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

It could have believed that Dad would again resort to family violence which could physically or emotionally harm Mom and B.E.S. *See In re D.M.*, 452 S.W.3d at 472. It could also have believed that Mom is meeting B.E.S.'s present needs and will meet her future needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in B.E.S.'s best interest for Dad's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Dad's second issue.

**CONSERVATORSHIP FINDING**

In his third issue, Dad challenges the trial court's conservatorship finding based on his legal and factual sufficiency challenges to the trial court's statutory ground finding on (E) and its finding on the best interest of the child.

Because the evidence was legally and factually sufficient to support the trial court's statutory ground (E) and best-interest-of-the-child findings, we overrule Dad's third issue.

**CONCLUSION**

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Dad's course of conduct met subsections (E), (N), and (O):

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>     . . . .
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>     (i) the department has made reasonable efforts to return the child to the parent;
>     (ii) the parent has not regularly visited or maintained significant contact with the child; and
>     (iii) the parent has demonstrated an inability to provide the child with a safe environment;
>         [and]
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

---

[4] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1)   the child's age and physical and mental vulnerabilities;
(2)   the frequency and nature of out-of-home placements;
(3)   the magnitude, frequency, and circumstances of the harm to the child;
(4)   whether the child has been the victim of repeated harm after the initial report and intervention by the department;
(5)   whether the child is fearful of living in or returning to the child's home;
(6)   the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
(7)   whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
(8)   whether there is a history of substance abuse by the child's family or others who have access to the child's home;
(9)   whether the perpetrator of the harm to the child is identified;
(10)  the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
(11)  the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
(12)  whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:
(A) minimally adequate health and nutritional care;
(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
(C) guidance and supervision consistent with the child's safety;
(D) a safe physical home environment;
(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
(F) an understanding of the child's needs and capabilities; and
(13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[5] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;
(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).